PAUL J. PASCUZZI, State Bar No. 148810
JENNIFER E. NIEMANN, State Bar No. 142151
FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP
400 Capitol Mall, Suite 1750
Sacramento, CA  95814
Telephone: (916) 329-7400
Facsimile: (916) 329-7435
ppascuzzi@ffwplaw.com
jniemann@ffwplaw.com

Proposed Attorneys for Grail Semiconductor

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>GRAIL SEMICONDUCTOR, a California corporation,<br><br>Debtor-in-Possession | CASE NO. 15-29890<br><br>DCN:  FWP-1<br><br>Date:      January 27, 2016<br>Time:     10:00 a.m.<br>Courtroom:  34<br>501 I Street, 6th Floor<br>Sacramento, CA |

**DEBTOR'S MOTION FOR ORDER AUTHORIZING THE
CONTINUED EMPLOYMENT AND RETENTION OF
MICHAEL F. BURKART AS THE DEBTOR'S CHIEF RESOLUTION
OFFICER EFFECTIVE AS OF THE PETITION DATE**

Grail Semiconductor, a California corporation, the Debtor and Debtor in Possession herein (the "Debtor" or "Grail"), hereby files this Motion for Order Authorizing the Continued Employment and Retention of Michael F. Burkart as the Debtor's Chief Resolution Officer Effective as of the Petition Date (the "Motion").  The Debtor has no operating business and recently settled "bet the company" litigation resulting in Grail receiving certain settlement proceeds.[1]  Upon examination, it appears that creditor claims which may be asserted against Grail could exceed the settlement proceeds.  In addition, pre-petition Grail had issues with its corporate officers that resulted in Grail appointing Mr. Burkart as its Chief Resolution Officer ("CRO").

---

[1] The settlement agreement prohibits the disclosure of any of the settlement terms, so Grail is not disclosing specific information about the settlement at this time.

Mr. Burkart was selected, pursuant to the terms of an engagement contract (described in more detail below), to lead Grail's efforts to resolve all claims against the company as well as pursue claims held by Grail against others.  While Mr. Burkart was only retained recently, based on the pre-petition knowledge gained by Mr. Burkart since his retention, the continued retention of Mr. Burkart post-petition is fair and reasonable.  In support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. §157(b)(2)(A).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicates for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101, *et. seq.* (the "Bankruptcy Code").

## BACKGROUND

3.  On December 30, 2015 (the "Petition Date"), the Debtor filed a voluntary petition with the Court under chapter 11 of the Bankruptcy Code.  The Debtor remains in possession of its estate, no trustee having been appointed.  The Debtor is managing its business as a debtor-in-possession pursuant to the provisions of Sections 1107 and 1108 of the Bankruptcy Code.

4.  Grail was formed in January 2000 by two cousins, Donald Stern and Robert Stern, as a start-up corporation to market new technology in memory chip design created by Donald Stern.  *Grail Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.*, 225 Cal. App. 4th 786, 789 (2014) ("Grail Decision").

5.  In an effort to market and produce the technology, Grail and Donald Stern met with two representatives of Mitsubishi Electric & Electronics USA, Inc. ("Mitsubishi"), in April 2001, for possible outside investment or product development.  *Id.* at 790.  Certain information was disclosed to Mitsubishi at that meeting pursuant to a nondisclosure agreement ("NDA").  *Id.*

6.  In June 2004, Donald Stern read about new chip technology from a joint venture between Mitsubishi's parent company, Mitsubishi Electric Company, and Hitachi, Ltd.  *Id.*  Donald Stern believed the joint venture was using the chip technology in violation of the NDA.

*Id*. at 791. In June 2007, Grail sued Mitsubishi in California state court for, among other things, breach of the NDA. *Id*.

7. Grail litigated with Mitsubishi for over eight years. Grail did not and does not have any other business operations. Declaration of Richard L. Gilbert in support of this Motion ("Gilbert Decl."), ¶ 3.

8. In May 2012, Grail obtained a $124 million damages award after a three-week jury trial. That award was set aside when the trial court denied Mitsubishi's motion for a judgment notwithstanding the verdict, but granted the motion for a new trial as to damages only. Grail Decision at 789. The parties filed cross-appeals. In April 2014, the California Court of Appeal affirmed the trial court in a published decision. *See generally*, Grail Decision.

9. The retrial of Grail's damages claims was set to commence on October 26, 2015. On the eve of the retrial, the parties settled the dispute. Gilbert Decl. at ¶ 4.

10. Shortly after the settlement with Mitsubishi, Grail's CEO took a number of actions adverse to Grail's interests, including seeking to void Grail's fee agreement with its attorneys without the approval of Grail's Board of Directors ("Board"). *Id*. at ¶ 5. In late October 2015, the Board revoked the corporate authority of Grail's only two officers. *Id*.

11. Certain payments were made from the settlement proceeds. *Id*. at ¶ 6. However, it became clear that Grail had a number of creditors and creditor claims that likely could exceed the settlement proceeds. *Id*. In November 2015, the Board retained counsel to assist it in evaluating its current state of affairs, including claims against its assets. *Id*. at ¶ 7. In mid-December 2015, the Board also retained Michael F. Burkart as Grail's CRO to lead Grail's efforts to pursue claims held by Grail as well as resolve all claims against the company. *Id*. at ¶ 8.

12. On December 15, 2015, Michael Burkart was appointed as CRO. Declaration of Michael F. Burkart in support of this Motion ("Burkart Decl."), ¶ 5. This bankruptcy case was filed shortly thereafter, the timing of which was primarily driven by the need to preserve possible avoidance actions. *Id*. at ¶ 6.

**RELIEF REQUESTED**

13. By this Motion, the Debtor respectfully requests the entry of an order, pursuant to

Bankruptcy Code sections 363 and 105(a), authorizing the continued employment and retention of Michael F. Burkart as the Debtor's Chief Resolution Officer, effective as of the Petition Date, and approving the engagement agreement between the Debtor and Mr. Burkart ("Engagement Contract"), attached as Exhibit A to the Exhibit Document filed with this Motion.

### BASIS FOR RETENTION

14. The Debtor's primary asset is the settlement proceeds from the Mitsubishi litigation. Gilbert Decl. at ¶ 9. It became clear that Grail had a number of creditors and creditor claims that likely could exceed the settlement proceeds. *Id*. at ¶ 6. In recognition of its need for sound advice in resolving all claims against Grail and pursuing claims held by Grail, the Debtor, among other things, sought to retain a candidate with substantial experience in that area. As a result of Mr. Burkart's expertise and successful history as a Chapter 11 and Chapter 7 trustee as well as other similar roles, the Debtor selected Mr. Burkart to provide services to it pursuant to the terms the Engagement Contract.

15. On December 15, 2015, the Debtor retained Mr. Burkart to provide certain services for the Debtor. The Debtor requested that Mr. Burkart serve as the Debtor's CRO. Since being retained, Mr. Burkart has developed a great deal of institutional knowledge with respect to the Debtor's history and financial condition as the result of the pre-petition engagement. The Debtor believes that such institutional knowledge will further enable Mr. Burkart to perform his duties in the most cost-effective and efficient manner. Accordingly, the Debtor believes that the retention of Mr. Burkart as the CRO is in the best interests of the estate.

### MICHAEL BURKART QUALIFICATIONS

16. Mr. Burkart has twenty-six years of commercial banking experience, including seven years serving as president, chief executive officer and board member of four different publicly owned commercial banks. In addition, Mr. Burkart has served as a Chapter 11 trustee as well as a Chapter 7 panel trustee in the Eastern District of California from 1996 to 2012. In that capacity, Mr. Burkart administered approximately 1,000 cases per year, depending on the level of new bankruptcy filings.

17. Since August 2010, Mr. Burkart also has been serving as the Plan Administrator

under the court-approved Chapter 11 Liquidating Plan of Heller Ehrman LLP (Case No. 08-32514) ("Heller"), filed in the Northern District of California. Heller was a 115-year-old, San Francisco-based, international law firm that filed Chapter 11 in December 2008. The law firm once consisted of over 700 attorneys generating approximately $700 million in annual income at its prime. Since Mr. Burkart was appointed as the Plan Administrator, all administrative fees plus approximately $8.5 million in priority unsecured claims have been paid in full as well as approximately 60% to general unsecured creditors. As Plan Administrator, Mr. Burkart filed and prosecuted hundreds of complaints against third parties in many state courts across the United States (i.e., collection of accounts receivable) and the Bankruptcy Court in the Northern District of California (i.e., recovery of fraudulent transfers, objections to creditor claims, etc.). Mr. Burkart also has defended a number of claims for alleged legal malpractice.

18. With respect to Grail, Mr. Burkart has already taken an active role in spearheading the Debtor's efforts to prepare for its Chapter 11 filing. As set forth above, Mr. Burkart has substantial experience in winding down a financially troubled company. Mr. Burkart also has developed a strong working relationship with the Debtor as well as the Debtor's professionals and Grail's Board.

19. The Debtor selected Mr. Burkart based on his longstanding reputation in assisting companies through complex wind downs as well as his understanding and practice of fiduciary responsibility and competent corporate governance. Mr. Burkart has invested numerous hours reviewing and analyzing the Debtor's documents and is well-qualified and able to continue to provide services to the Debtor in a cost-effective, efficient and timely manner. The Debtor believes that continued engagement of Mr. Burkart as the Debtor's CRO during its Chapter 11 case is essential to the success of the case.

## SCOPE OF SERVICES[2]

20. Pursuant to the Engagement Contract, Mr. Burkart will provide such consulting and advisory services as Mr. Burkart and the Debtor deem appropriate and feasible in order to

---

[2] This summary is provided solely for convenience purposes. The terms of the engagement shall be governed by the Engagement Contract. To the extent that this summary conflicts with the Engagement Contract, the Engagement Contract shall govern.

advise the Debtor in the course of this Chapter 11 case, including but not limited to the following:

    A.     Officer – Serve as Grail's CRO, to lead Grail's restructuring efforts with the duties as defined for this management role in the Engagement Contract, the December 10, 2015, Board Minutes, and as further defined by Grail.

    B.     Duties and Powers – the CRO shall, without any further act, approval or vote of the Board or any other Person, have authority regarding the management of litigation and creditors' claims. The powers of the CRO shall include, without limitation, the power to:

    1.     Evaluate all claims against Grail, negotiate resolution of such claims, and enter into settlement agreements to resolve such claims.

    2.     Manage and direct Grail's attorneys on all litigation to which Grail is a party and negotiate the resolution of such litigation, including authorizing pursuit of claims held by Grail whether by litigation or otherwise.

    3.     Advise Grail as to whether a petition in bankruptcy is necessary or appropriate.

    4.     Assist Grail in fulfilling its duties and obligations under the law to creditors, shareholders and other parties-in-interest.

    5.     Serve as Grail's Vice President, Assistant CFO and Assistant Secretary.

    C.     Cash Management and Projections

    1.     Evaluate current liquidity position and expected future cash flows;

    2.     Manage and control cash disbursements; and

    3.     Develop and implement cash conservation measures.

    D.     Other – perform such other advisory services as required consistent with the role of a financial advisor and not duplicative of services provided by other professionals, including selecting the plan or strategic alternative(s) that the CRO deems (in the exercise of his sole and absolute discretion) to be prudent or reasonable under the circumstances.

21.     The services listed above are vital to the success of this Chapter 11 case, and the Debtor requires knowledgeable management to render such services. Accordingly, the Debtor

believes that Mr. Burkart is well qualified to perform these services in this case.

**TERMS OF RETENTION**

22.  Mr. Burkart is not owed any amounts with respect to his pre-petition fees and expenses.  Prior to the Petition Date, Mr. Burkart received from the Debtor an initial retainer of $20,000 and an additional retainer of $150,000, for a total of $170,000, of which $6,810.00 has been applied to pay for pre-petition services.

23.  The Debtor shall pay to Mr. Burkart compensation at the hourly rate of $300 for the services set forth above based upon the submission of invoices by Mr. Burkart to the Debtor.  Because Mr. Burkart is being retained as the Debtor's officer and not being employed as a professional under section 327 of the Bankruptcy Code, Mr. Burkart will not be submitting fee applications pursuant to sections 330 and 331 of the Bankruptcy Code.  In addition to the fees outlined above, Mr. Burkart will bill the Debtor for reasonable and customary out-of-pocket expenses incurred in connection with Mr. Burkart's engagement, such as telephone, overnight mail, messenger, travel, meals, accommodations and other expenses specifically related to Mr. Burkart's engagement.

24.  The Debtor believes that Mr. Burkart's fees and compensation as set forth herein are reasonable and justified under the circumstances.

**LEGAL ANALYSIS**

25.  Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b).  Under applicable case law in this and other circuits, courts will approve a debtor's proposed use of its assets under section 363(b) if it represents a sound business purpose on the part of the debtor. *See, e.g., In re 240 North Brand Partners, Ltd.*, 200 B.R. 653, 659 (9th Cir. BAP 1996) ("[D]ebtors who wish to utilize § 363(b) to dispose of property of the estate must demonstrate that such disposition has a valid business justification."); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) ("In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b), courts consider a variety of factors, which essentially represent a business

judgment test."); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (courts defer to a trustee's judgment concerning use of property under § 363(b) when there is a legitimate business justification); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 175-76 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)). Under the business judgment rule, a court will not interfere with the judgment of a board of directors unless there is a showing of "gross and palpable overreaching." *In re Marvel Entm't Group, Inc.*, 273 B.R. 58, 78 (Bankr. D. Del. 2002) ("under the business judgment rule, a board's 'decisions will not be disturbed if they can be attributed to any rational purpose' and a court 'will not substitute its own notions of what is or is not sound business judgment'") (citing *Sinclair Oil Corp. v. Levien*, 280 A.2d 717, 719-20 (Del. 1971)).

26. In a recent Chapter 11 case in the Eastern District of California, the Honorable Thomas C. Holman approved the employment pursuant to section 363 of the Bankruptcy Code of two senior consultants with FTI Consulting, Inc. to be the Chief Restructuring Officer and Senior Vice President of ZF in Liquidation, LLC (fka Zacky Farms, LLC) and specifically approved that compensation for these two office positions ". . . shall not be subject to the same review and payment process as professionals employed under section 327 of the Bankruptcy Code."[3]

27. The Debtor submits that the employment of Mr. Burkart is a sound exercise of its business judgment and satisfies section 363 of the Bankruptcy Code as Mr. Burkart's services are necessary and essential to the Debtor's reorganization efforts and overall administration of this bankruptcy case. In addition to the specific knowledge he has acquired about the Debtor's business, Mr. Burkart has extensive experience assisting in the wind down of distressed companies.

## MR. BURKART'S DISINTERESTEDNESS

28. Mr. Burkart has informed the Debtor that, except as may be set forth in his Declaration filed with this Motion, Mr. Burkart (i) has no connection with the Debtor, its

---

[3] *See* Order Granting Motion (I) Authorizing the Continued Employment of FTI Consulting, Inc. as the Debtor's Chief Restructuring Officer Effective as of the Petition Date; and (II) Approving the Engagement Agreement between the Debtor and Keith F. Cooper and FTI Consulting, Inc. ¶¶ 1-3 (Case no. 12-37961-B-11, Docket No.289).

creditors or other parties-in-interest in this case, (ii) does not hold any interest adverse to the Debtor's estate, and (iii) believes it is a "disinterested person" as defined within Section 101(14) of the Bankruptcy Code.

29. Mr. Burkart will conduct an ongoing review of his files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, Mr. Burkart will supplement his disclosure to the Court.

30. Mr. Burkart has agreed not to share with any person or firm the compensation to be paid for professional services rendered in connection with this case.

## CONCLUSION

WHEREFORE, the Debtor respectfully request that the Court enter an order:

1. Authorizing the continued employment and retention of Mr. Burkart under Sections 363 and 105(a) of the Bankruptcy Code, as the Debtor's CRO, upon the terms and conditions set forth above;

2. Approving the Engagement Contract attached as Exhibit A to the Exhibit Document, between the Debtor and Mr. Burkart; and

3. Granting all such other and further relief as is just and proper.

Dated: December 30, 2015

          FELDERSTEIN FITZGERALD
          WILLOUGHBY & PASCUZZI LLP

          By:*/s/ Paul J. Pascuzzi*
          PAUL J. PASCUZZI
          Proposed Attorneys for
          Grail Semiconductor