1  PAUL J. PASCUZZI, State Bar No. 148810
   JENNIFER E. NIEMANN, State Bar No. 142151
2  FELDERSTEIN FITZGERALD
   WILLOUGHBY & PASCUZZI LLP
3  400 Capitol Mall, Suite 1750
   Sacramento, CA  95814
4  Telephone: (916) 329-7400
   Facsimile: (916) 329-7435
5  ppascuzzi@ffwplaw.com
   jniemann@ffwplaw.com
6
   Attorneys for Grail Semiconductor
7

8                    UNITED STATES BANKRUPTCY COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                        SACRAMENTO DIVISION

11  In re:                              CASE NO. 15-29890-D-11

12  GRAIL SEMICONDUCTOR, a
    California corporation,             Date:        January 27, 2016
13                                      Time:        10:00 a.m.
                Debtor-In-Possession.   Courtroom:   34
14                                                   501 I Street, 6th Floor
                                                     Sacramento, CA
15

16                    **DEBTOR'S INITIAL STATUS REPORT**

17          Grail Semiconductor, a California corporation, the Debtor and Debtor in Possession herein

18  (the "Debtor" or "Grail"), files this initial status report pursuant to this Court's order dated

19  January 4, 2016.

20          **BACKGROUND OF THE DEBTOR AND REASON FOR FILING**

21          The corporate Debtor was organized under the laws of the State of California on January

22  24, 2000, under the name of NV Memory, Inc., by two cousins, Donald Stern and Robert Stern,

23  as a start-up corporation to market new technology in memory chip design created and patented

24  by Donald Stern.    On or about March 1, 2001, the Debtor filed Amended Articles of

25  Incorporation to formally change its name to Grail Semiconductor.  The Debtor recently settled

26  "bet the company" litigation resulting in Grail receiving certain settlement proceeds.[1]   Certain

27  _____

28  [1] The settlement agreement prohibits the disclosure of any of the settlement terms, so Grail is not
    disclosing specific information about the settlement at this time.

1    payments have been made from these settlement proceeds.  The Debtor's primary assets include

2    the remaining settlement proceeds in the form of cash, an investment in a Canadian mining

3    company's common stock, and potential claims against former insiders and third parties.

4    Prior to the settlement, Grail had been litigating with Mitsubishi Electric & Electronics

5    USA, Inc. ("Mitsubishi") for eight years over a breach of a nondisclosure agreement ("NDA")

6    which was entered into in April 2001.  In June 2004, Donald Stern read about new chip

7    technology from a joint venture between Mitsubishi's parent company, Mitsubishi Electric

8    Company, and Hitachi, Ltd.  Donald Stern believed the joint venture was using the chip

9    technology in violation of the NDA.  In June 2007, Grail sued Mitsubishi in California state court

10    for, among other things, breach of the NDA.

11    In May 2012, Grail obtained a $124 million damages award after a three-week jury trial.

12    That award was set aside when the trial court denied Mitsubishi's motion for a judgment

13    notwithstanding the verdict, but granted the motion for a new trial as to damages only.  The

14    parties filed cross-appeals.  In April 2014, the California Court of Appeal affirmed the trial court

15    in a published decision.  *See generally Grail Semiconductor, Inc. v. Mitsubishi Electric &*

16    *Electronics USA, Inc.*, 225 Cal. App. 4th 786, 789 (2014).

17    Shortly after the settlement with Mitsubishi, Grail's then-CEO took a number of actions

18    adverse to Grail's interests, including seeking to void Grail's fee agreement with its attorneys

19    without the approval of Grail's Board of Directors ("Board").[2]  In late October 2015, the Board

20    revoked the corporate authority of Grail's only two officers ("Officers"), Ron Hofer and Brad

21    Woods.

22    Based on demands against the settlement proceeds, it became clear that creditor claims

23    likely could exceed the settlement proceeds.  In November 2015, the Board retained counsel to

24    assist it in evaluating its current state of affairs, including claims against its assets.  In mid-

25    December 2015, the Board also retained Michael F. Burkart as Grail's CRO to lead Grail's efforts

26    to pursue claims held by Grail as well as resolve all claims against the company.

27

28    [2]  Grail's current Board of Directors consists of Retired Superior Court Judge Richard L. Gilbert, Donald Stern and Robert Stern.

1  Facing the threat that an involuntary petition would be filed and of numerous demands

2  from creditors and shareholders for payment, the Debtor filed this Chapter 11 case on December

3  30, 2015.  The timing was primarily driven by the need to preserve possible avoidance actions.

4  ### POST-PETITION ACTIVITIES

5  On December 30, 2015, the Debtor filed and served a motion to employ Mr. Burkart as

6  the Debtor's CRO post-petition ("Motion").  The Motion is set for hearing on January 27, 2016,

7  at 10:00 a.m., the same time as the initial status conference in this case.  Written opposition to the

8  Motion was to be filed no later than January 13, 2016.  As outlined in the Motion, Mr. Burkart

9  has the experience and skill set to lead the Debtor in evaluating its potential litigation claims,

10  resolving claims against and interests in the Debtor, and evaluating the Debtor's future business

11  prospects.[3]

12  Because the authority of the Debtor's CEO and CFO was revoked, the Debtor is in the

13  unusual position of not having all of the information about its operations over the past several

14  years.  Mr. Burkart and counsel for the Debtor have invested substantial amounts of time, both

15  pre-petition and post-petition, to gather and absorb as much information as possible.  However, as

16  discussed below, that process continues.

17  On January 4, 2016, the Debtor applied for and obtained an extension to January 28, 2016,

18  to file its schedules and related documents.  On December 31, 2015, and January 4, 2016, the

19  Debtor sent letters to the Officers requesting turnover of the Debtor's corporate records and other

20  information necessary for the Debtor to complete its schedules and related documents by

21  January 11, 2016, so the Debtor could comply with the January 28, 2016 deadline.

22  The Debtor has been receiving the requested information on a rolling basis.  The Debtor

23  will make every effort to have those schedules completed and ready to be filed by January 28,

24  2016.  However, to ensure that the Debtor has adequate time to collect the necessary information

25  and complete its schedules timely, the Debtor requested an additional 14 days beyond the current

26  deadline of January 28, 2016 (to February 11, 2016) to prepare and file its Schedules, Statement

27
28  [3]  The U.S. Trustee filed a pleading outlining certain provisions it would like to see in any order granting the Motion.  The Debtor believes it will be able to work out an agreed order to satisfy the U.S. Trustee's concerns.

Chapter 11 Initial Status Report

of Financial Affairs and List of Equity Security Holders in the appropriate format. The Debtor's second motion to extend the time to file schedules was filed on January 13, 2016, and is set for hearing at the same time as this status conference.

The settlement agreement with Mitsubishi includes a provision generally prohibiting the Debtor from disclosing the settlement terms, including but not limited to the amount of the settlement. Recognizing that the settlement terms will have to be disclosed in the bankruptcy case, the Debtor has sent a letter to Mitsubishi in accordance with the settlement agreement informing Mitsubishi that Grail is compelled by law to disclose the settlement terms, thereby placing the burden on Mitsubishi to seek a protective order if it so choses.

## FILING OF A PLAN

Until the Debtor receives all of its books and records and completes its investigation of its assets, claims and potential business prospects, it is difficult to predict the type of plan or the timing of a plan. Certainly, it is unlikely the Debtor will file a plan prior to the claims bar date of June 27, 2016, for governmental claims.

## CRAMDOWN

At this time, the Debtor anticipates proposing a liquidating plan of reorganization that will be confirmed under 11 U.S.C. § 1129(a)(8) and will not require cramdown pursuant to 11 U.S.C. § 1129(b).

## VALUATION OF ASSETS

The Debtor does not anticipate any litigation concerning the valuation of assets. The Debtor anticipates litigation over whether certain pre-petition transfers are avoidable and in connection with objections to claims.

## CASH COLLATERAL AND ADEQUATE PROTECTION

While certain creditors assert a security interest in the remaining settlement proceeds, the Debtor does not anticipate any motions concerning cash collateral at this time. The Debtor does not anticipate any contested motions concerning adequate protection issues.

## ENVIRONMENTAL ISSUES

The Debtor is not aware of any material environmental issues relating to its property or

Chapter 11 Initial Status Report

operations.

## OBJECTIONS TO CLAIMS

The claims bar date has not yet passed in this case. The Debtor will object to any claims that are materially inaccurate. It is too soon to determine the number of objections to claims or the dollar amount of the objections the Debtor will file.

## POST-CONFIRMATION SALE OF ASSETS

The Debtor holds certain shares of stock plus warrants in Nemaska Lithium, Inc., a Canadian mining company, that may be sold during this Chapter 11 case.

## ANTICIPATED PROFESSIONAL FEES

At this early juncture in the case, it is not possible to project the total professional fees in this case. To date the Debtor has requested, and obtained, Court authority to employ Felderstein Fitzgerald Willoughby & Pascuzzi LLP as its Chapter 11 counsel.

The Debtor also may file applications to employ the Law Offices of Timothy A. Charshaf as its special corporate counsel, as Mr. Charshaf has been general corporate counsel for Grail pre-petition and has extensive knowledge about Grail. The Debtor also will file an application to employ certified accounting professionals to assist with the preparation and filing of reports with the appropriate taxing authorities. Further, the Debtor is evaluating whether the employment of Boutin Jones, Inc. is needed. Boutin acted as Grail's special litigation counsel with respect to ongoing litigation with one of the prior officers, Ronald Hofer.

Dated: January 15, 2016

FELDERSTEIN FITZGERALD
WILLOUGHBY & PASCUZZI LLP

By:/s/ Paul J. Pascuzzi_____
PAUL J. PASCUZZI
Attorneys for Grail Semiconductor

Chapter 11 Initial Status Report